Mr. Siegel Good morning, Your Honors. I'm Zachary Siegel, and along with my partner Richard Levitt, we represent Dilshad Khusanov in his appeal from the Nile of his motion for compassionate release brought pursuant to 18 U.S.C. 3582. The Court knows from reading the briefs how horrendous Khusanov's family situation is. We readily acknowledge, however, that this situation doesn't entitle him to relief as a matter of law. But it did entitle him to a fair shot of relief. He was denied that, and he was denied that because the District Court abuses discretion by committing clear error in its 1 v. 1.13 analysis, otherwise known as the Extraordinary and Compelling Analysis, and its woefully insufficient analysis of the 3553A factors. In fact, the Court's 3553A analysis deprives this Court of the opportunity to meaningfully review whether that analysis is correct or not. I'll add that the relief he sought, a reduction to time served, would as of today get him some 13 months before his current projected release date of January 14th, 2027. I'm happy to address the several errors the Court committed in its 1 v. 1.13 analysis, but — And also, can you focus on what you think was inconsistent with the guidelines? Yeah, of course. So what was inconsistent about the guidelines was the District Court. In that instance, it found that 1 v. 1.13 is not binding on District Courts. We think that was an error as a matter of law that we will either agree or not agree to. So that might have been an error of law, but it didn't cause prejudice because he did rely on the enumerated reasons, right? He wasn't interpreted in the guidelines, right? So why don't you explain what you thought was inconsistent with the guidelines? Of course. Two things. The first error that the judge made was that he required Mr. Kucinoff to show that his wife — sorry, that he was the only available caregiver when the — Yeah, I get that, that the other provisions of the guideline don't say that the defendant would be the only available caregiver. But, you know, it can't sort of literally be that whenever there's something that happens — so if I'm in prison and my child is in the custody of my aunt and uncle and my uncle gets sick, is that an extraordinary and compelling reason if the aunt is still — you know what I mean? There's an intuition that maybe if there's only one parent taking care of it and nobody else, maybe that's an extraordinary and compelling reason. But it can't literally be that whoever is taking care of the child, if that person — if something happens to that person, like, that's automatically an extraordinary and compelling reason, right? Well, I think if you look at — I think that one of the issues that the guidelines themselves, 1B1.13 in this context, it is considered binding. And I think that by virtue of that, the court has to at least in the first instance find that if the circumstances presented fall within that guideline, it can find that the circumstances are extraordinary and compelling. But that doesn't, as a matter of law, require the court to then go off and say, all right, well, I'm now going to grant you the proposed reduction. What Your Honor, I think, is alluding to is that the 3553 analysis will then cure — So you're saying that the way it cures is maybe even in my hypothetical where the child is in the custody of my aunt and uncle and only one of them gets sick, and so it doesn't really mean that it makes sense for me to be released. You say that what a district court should do properly is say, well, that is an extraordinary and compelling reason, but under the 3553A factors, I think that the culpability of the defendant outweighs that reason, because it's not as serious an extraordinary circumstance as it might be if there were no other caretaker. No, not — maybe I didn't word it properly. I think in this circumstance in particular, you know, the — there was a finding of incapacitation, for example. I think — well, here's a better way of — Well, there wasn't a finding of incapacitation in this case, right? So actually, right where the defendant says he's not the only caregiver, he says, defendant has not demonstrated his wife is presently incapacitated, and defendant would be the only available caregiver. Now, just in fairness, he cites case law that suggests that you do need to be the only available caregiver, so I don't know whether that case law is right or wrong. But certainly, the idea that his wife is not presently incapacitated would be an independent reason for saying it's not — it doesn't meet the requirements of 138 — or, sorry, 3A. I think his wife was incapacitated, and I think we sufficiently made that showing. But I think putting all of that — Why do you think you sufficiently made that showing? I mean, she's getting cancer treatments, but she was getting the cancer treatments and had, you know, the most extensive treatments before he was even sentenced, right? So — and she was taking care of the child throughout this time. I think — I don't think she's incapacitated in the way that would mean that she can't take care of the child. Right. I think one of the cases — Why is that wrong? Well, I think, for one example, that one of the cases we cited, too, was United States v. Nunes, where it was a Southern District case cited by Judge Torres, which really came to the exact same — which came to the conclusion that I'm saying. In that case, the mother was undergoing cancer treatment, and periodically, she was unable to assist the child or do certain things for the child, take him to certain appointments. But the court still made the finding that the mother was incapacitated such that they were able to make the show. Well, isn't that a fact-specific thing? Like, it might be that the nature of the treatments is such — so extensive that somebody is essentially incapacitated. It might be that it's not so extensive that the person can take care of the child. And so the district court here says she has a history of even having had medical treatments, she takes care of the child. Well, I think they just — The guideline does say death or incapacitation. It doesn't say, like, she's hampered in taking care of the child. She actually has to be incapacitated, right? I mean, I think that's — it's the definition of incapacitation. I think that Judge Torres in the Nunes case, her definition was more akin to, I think, what we're looking for, is that it's not entire incapacitation. It's just the inability periodically even to take your child to an appointment, to do this, to do that. And I think — I mean, if you can't go to some appointments, you're incapacitated, right? It has to be that you're not functional. That's just the ordinary meaning of incapacitation, isn't it? I guess the part that I'm struggling with — and I don't mean to cut off Judge Manasci's questioning, so maybe you can answer them both — is, aside from whether or not — the legal question of whether or not it was the sole caregiver, isn't what we're trying to assess whether or not the district court had enough to make the decision that they did on incapacitation, right? I mean, we could believe everything you say and say, OK, a different decision would have been supported. But I guess the question I'm asking you is, given the deference that we owe, what do you think is in the record that makes it improper for the district court to have reached the conclusion that it did on incapacitation? The reasons that — the reason that — of course, you have to give the court certain deference, as you were saying. The reasons that we were able to show were the reasons I just provided to Judge Manasci, which is that she, like I said, was temporarily or in certain instances incapable of taking care of her child. In one instance, she was so incapable that she had to leave the child in Uzbekistan on two occasions. But even putting that to the side, even if the court were not to find that it fits specifically within 1B1.13, the family circumstances, it had a duty to still consider it, which is what we argued, to consider it in the aggregate, which I think was the greater problem. If you looked at our brief, which is — He actually says, I consider it in the aggregate, doesn't he? No. He — That's not a fact. No. What he said was, none of the previously discussed factors are extraordinary and compelling to justify a sentence reduction. And rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason for a sentence reduction under 35, blah, blah, blah, blah, blah. So even if, hypothetically speaking, the court were to say, all right, it doesn't fit neatly within the family circumstance — Well, he says that Khusinov argues that his rehabilitation in combination with the prior circumstances warrants a sentence reduction. He says that he's not going to doubt that because none of the previously discussed factors are extraordinary and compelling. So he basically decided that there isn't anything to combine the rehabilitation with. Well, that was the error that occurred, which is the case I cited in my 28-year letter in Duluth-Mendez. It was a family circumstances rehabilitation argument, and the court adopted the government's argument that, oh, well, these types of situations are very commonplace, and so because you can't show that your family circumstances standing alone are extraordinary and compelling, I'm not going to bother going off and considering whether it can be in conjunction with the rehabilitation. I think that's the point of this combination circumstances argument, which, of course, which at least the district court was doubt on. But that's a little puzzling. So you're saying that actually if there is no — nothing that would count as an extraordinary and compelling reason by itself, if you add rehabilitation to it, it becomes an extraordinary and compelling reason? Yes. And I think that's — That's a kind of weird conclusion when Congress specifically said that rehabilitation can't be the reason — can't be the extraordinary and compelling reason. If rehabilitation is the thing that makes something extraordinary and compelling, it seems pretty close to defying what Congress said, doesn't it? No, I don't think so, Your Honor, because it's not — excuse me — it's not rehabilitation standing alone. That's specific what Congress prohibited. And district courts went around saying, like, this person does not have an extraordinary and compelling reason standing alone. But because he's made a bunch of rehabilitative efforts, I conclude that that makes it extraordinary and compelling. That would be judges deciding that rehabilitation is what make — was what counts as an extraordinary and compelling reason. I can cite, for Your Honor, probably about a dozen cases, or maybe even more, where district courts have found a combination of rehabilitation with something else, whether it be a disparity, whether it be a condition of confinement, whether it be a family circumstance. And these were people who committed — were convicted of murder. And the courts, in each instance, found this combination to amount to an extraordinary and compelling circumstance. In none of those cases did the government appeal on — Well, so that means we don't have a precedent on the point. And it's not obvious to me that it's — that it's right. But so does the rehabilitation have to be related to what — what is pushed over the line to become extraordinary and compelling? You're saying, like, any — any predicate could become extraordinary and compelling by virtue of rehabilitation. I think if the court — I think the duty of the court is to look at it holistically. And I think when you take it and you look at it independently — and I think the family circumstance are — explanation I just gave you is a good — is a good example. So the way we framed it in our motion was family circumstances and rehabilitation. So let's — looking at the family circumstances, the court can say to itself, okay, she might not be entirely incapacitated. This doesn't mean that, A, she can't control him. She has to leave the son in Uzbekistan. He's ba-ba-ba-ba-ba. And then — That is very weird, right? So what you're saying is he's going to look at the facts and say she is not incapacitated and, therefore, does not meet the definition of extraordinary compelling reasons in the guidelines. But because he has engaged in some rehabilitation, I'm going to decide that she is now incapacitated. No, not at all, Your Honor. I don't think that — that's not what the court's going to find. The court's not going to find that she is now incapacitated. What the court's going to find is that the circumstances amount to extraordinary and compelling, which then allow the court to go off and decide whether the proposed reduction is consistent with 3553-A. But the policy statement of the Citizen Commission is binding. Yeah. Nothing in the policy statement says that, like, you could go beyond these requirements if you decide that, in combination with rehabilitation, it ends up being extraordinary compelling. I think — So, like, what you're proposing would be a violation of the policy statement. Not necessarily, Your Honor. I think the guideline is — it's expressly clear on that point. It expressly says any — it says a combination of circumstances. What says — you know, other reasons would be if the defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs 1 through 4, are similar in gravity to those described in paragraphs 1 through 4. That does not include rehabilitation. No. It would be a combination of these enumerated things. If I may, Your Honor — Or similar to the enumerated things. I understand, Your Honor. So, for one — just to give one example, I think Judge Block in his decision in Johnson, which we cited, said — he described it as rehabilitation plus. So you're looking at the rehabilitation. You're also looking at other factors. But if I can — maybe I'll bring it up when I come back on my rebuttal time. But in 1B1.13, where it does discuss rehabilitation, it does say expressly that it can be considered alongside other factors. And if — and so I think the problem — because the district court didn't properly consider the circumstances in the aggregate, what it ended up doing is the 3553A analysis suffered as a result. And, you know, the cases that we cited — But how did it suffer? I mean, we said that these are two independent inquiries. So even if you made a mistake in the extraordinary and compelling reasons, the 3553A factor is just an independent reason for denying, right? Well, yeah. Well, the three cases we cited, and it's the United States v. Davis, the Fourth Circuit case, the United States v. Malone, the Fourth Circuit case, the United States v. DeLuke-Mendez, each of those cases — in each of those cases, the circuit court said — well, at least first found that there was an erroneous finding on the extraordinary and compelling analysis. So in the Malone case, he treated 1B1.13 as binding when it wasn't. In the Davis case, the court said that he couldn't consider changes in law alongside rehabilitation. And in Menendez's case, they said that you — he just independently looked at family circumstances and refused to consider it alongside rehabilitation. Because those three issues were the core components of the arguments, when it got to the 3553A analysis, the court didn't go on to discuss those issues. And where —  I mean, the court didn't go on to discuss something on extraordinary and compelling reasons, and the 3553A analysis really wasn't independent ground, because the district court kind of dismissed that by relying on the first factor. Not necessarily. I think what the court was saying is because the court reached an erroneous conclusion on the extraordinary and compelling circumstances, it didn't then go on to provide a full explanation for these circumstances, or at least why they didn't reweigh the 3553A analysis. And I think here, that was really the biggest — that was — I think that was the biggest problem, was the Court's 3553A analysis, was that all it really did was it relied on its original sentencing findings. And I think that was problematic for at least two reasons, the first reason being that this was a C1C plea. Of course, courts are loathe to reject C1C pleas, and the district court during his — during the sentencing explicitly said that his findings were only — the reason he was making his findings was to explain or to justify, rather, why a below-guideline sentence was appropriate. There was no independent inquiry. There was no — nothing. But there was, right? I mean, first of all, his extensive 3553A thing from sentencing was only two years earlier, right? So he has a pretty extensive 3553A analysis when he does the original sentencing. And then here, he, like, spends — I mean, on the best law, it's, like, more than a page, so it must have been a bunch of regularly-typed pages explaining all the arguments for why the 3353A factors have changed. And he concludes that there is no argument that the balance has changed. It's not that he just says, I'm going to adhere to the earlier one, right? Well, no, I think that that's exactly what he said, was he — it was — it's exactly the hypothetical that was — was discussed in the previous case that was just before Your Honors. It was — he went through the list — and this is the same judge, for what it's worth. He went through the list, point by point by point by point. And then at the end of it, he said, at least on — well, at the original sentencing, he went through point by point by point in order to justify why a below-guideline sentence was okay for the C1C plea. And then at — when he denied our motion in the court below, he went through 3553A factors, he listed them. And then at the very end of his decision, he said — I'll just — I'll pull it up so I can quote it for you. At defendant's sentencing, the court recognized the seriousness of the defendant's  And so he really grounded his denial in the — in the offense itself without really looking at everything else. And there was a lot more here that was presented to the district court. Even putting — Why was there more here? I mean, the main argument was that he was really only trying to fight Assad. You know, putting aside, you know, whether it's better to have Assad or ISIS in charge of Syria, like, I don't even know which one is worse exactly. But, like, that was an issue in his original sentencing, right? That was his argument, is that he was only providing support because he was anti-Assad. Right? So in his allocution, he says, that was my main reason. But, like, I had reason to know that they were going to support ISIS. And so, like, that was something the district court already had considered. Yeah, the district court — So why would that — so, like, so the district court is right when he says, there isn't a new argument that would lead me to revise the balancing I did earlier because the argument is something that he had already made in the original sentencing. Well, the original sentencing, all the district court was trying to do was justify his below-guideline sentence pursuant to a C1C plea. There was no independent analysis. And I think what had changed since then, putting aside the family circumstances, of course, the court already knew about the conditions at MDC. But I think a poignant thing that came up after that was not discussed or even known in the current sentencing, at least by the district court and Mr. Kusinov, was that he was stipulating to removal to a country where the United States believed that he would be tortured as a result of his conviction. So what's now happening is we're back before the district court now. We present this argument, and the district court reverts back to its same sentencing findings without considering — What's the relevance of the removal? How is that related to the 3553a factors? I think it's relevant to the — in the first instance, to the history and characteristics of Mr. Kusinov. It's who he is, what he's facing, what he's going to be dealing with in the future. I think it also has to do with the — the requirement to promote justice, to — So because he's going to be removed to Uzbekistan, he should get out of prison sooner? No, not in the slightest. I think it's a consideration, though, that when he does — when he stipulated to this removal, he was unaware that the United States government believed that he was — could — as a result of his conviction, he might be tortured. And waived all — I'm challenging the removal, but, like, that's not really an issue. No, of course not, Your Honor. But I think the point is, is whether it's — does it promote respect for the law? Is it — is it sufficient to punish Mr. Kusinov where, in a situation, okay, if he gets out this point 13 months earlier, 75 percent through his sentence — I'm not sure I understand the argument, but regardless, that is also something that was considered the original sentencing, right? The removal order was imposed at the original sentencing. So the district court determined the sentence in combination with the removal is an appropriate punishment. So that's also not a new argument. Well, no, the district court — what it — yes, it did consider the removal, but what it didn't consider and what it didn't know was the possibility of him getting tortured. I mean, for an example, when — But I don't know which way that cuts. So if — well, the new information is he might be tortured. If he gets out of prison earlier, it means he's going to go back sooner and be tortured sooner. So, like, wouldn't he want to stay in custody, which at least does not involve torture, before being removed? No, not necessarily, Your Honor, because I think at least — it's unclear to us at this point what he can do to avoid removal. But I think at the very least — Right. And that's not an issue in this motion, right? No. Okay. So there is a removal order. And actually, why doesn't that cut against the extraordinary circumstances? So if he's going to be in Uzbekistan and the child is living in the United States, how is he going to be the caregiver anyway? Well, we haven't — I've been in touch with the family. And at this point, it's unclear to them what precisely they're going to do. I know at one point they did move — they went back to Uzbekistan twice because care was more affordable there. So does he represent to the district court that, like, okay, if I get out, I will move with my child to Uzbekistan, where I could be the full-time caregiver? We did not make the representation because at the time, the family wasn't entirely sure. But if he's going to be the full-time caregiver anyway, that's right. Well, there's also the possibility that he can provide financial support to the family as a result of working, and that was one of the other things that the judge disregarded. He said — I think the part that we're struggling with, and we can spend a lot of time talking about this, is what precisely do you think that we, as a matter of law, should require the district court to do more than what it did? It went through and said the totality of the circumstance. It went through all of the factors. What is the error that you would have us correct, other than reweighing the evidence that is before us, or what was before the district court, and reaching a different conclusion? Because in my mind, the legal errors that you point out, I am not hearing how those require a different conclusion, because if it is not inconsistent with the guidelines, it doesn't matter whether or not they're required or not required. If he found that she was not incapacitated, it does not matter whether or not he was right or wrong, that he had to be the sole caregiver. So I'm just wondering, what else is there that we can say that we need to think about that the district court got so wrong that we need to step in and correct? What the district court got so wrong was its 3553A analysis, because what it did was it essentially relied on its original sentencing findings without considering how these new issues contributed to this 3553A analysis. If we disagree with you that the district court did consider those issues, then that's game set match, right? Yeah, if the court agrees, if the court believes that the district court's 3553A analysis is sufficient, then yes. Okay, thank you very much, Mr. Siegel. You've reserved time for rebuttals. We'll hear from you again, but let's turn to the government. Mr. Rhyne. Good morning. May it please the Court, my name is Gilbert Rhyne. I'm an assistant United States attorney in the Eastern District of New York. And I represented the government in the district court in this case. As the Court just mentioned, as was just discussed, Section 3553A is a sufficient independent basis in which to have denied the defendant's motion. Are there ever times when an error in the Extraordinary and Compelling Circumstances analysis can be significant enough that it might infect the 3553A analysis? There are two independent bases to deny the motion. In order to grant relief here, you have to have both Extraordinary and Compelling  No, I understand that. But sometimes the reasons for the 3553A analysis is conducted in light of the Extraordinary Circumstance that the Court's found, right? Or am I wrong? No, the Court could have just not considered them at all and could have said under the 3553A analysis, the release or reduction of sentence would not be consistent with those factors. And so for that reason, I'm denying the motion. And the judge was clear in this case that even if he had found Extraordinary and Compelling Circumstances, that 3553A was a sufficient basis. In this case, in his opening brief before the district court, the defendant appellant directed the court to two particular sections of 3553A. It was A1, A2. And because that is what had been raised by the appellant, that's what the district court responded to. And with regard to the first factor, the circumstances of the offense, the judge was very heavily swayed by the fact that the offense was of great weight because, as was mentioned before, the defendant had attempted to give material support to ISIS. And the judge went through, in his opinion in this case, the terrible things that ISIS does and how it's well known to everybody and how the defendant took no steps to make sure that the support he gave was not going to be used to do some of the terrible things ISIS did and was only going to be used to counter Assad. And the court said specifically, gave an individualized assessment of the fact that the court was skeptical of the defendant's efforts to minimize what he had done. And so that was the court very heavily considered that factor. And with regard to the second factor under A2, the seriousness of the offense, the need to afford deterrence, and all the other factors listed there, the court went through all of them and, again, went unbalanced, just did not believe that any of the arguments raised by the appellant outweighed the seriousness of the offense in this case. So there's not – There might be a case where the district court says, well, I've determined that there is an extraordinary compelling circumstance. I'm also going to look at the 3563 factors, but it's not that important because I've already said that I'm going to deny the motion, so here's a little perfunctory analysis. Like, maybe in that case we might decide that the district court really didn't have an independent basis on 3553A. But, like, this is not that case because you're saying that he did actually look at all the arguments on 3553A and that was an independent basis for denying the motion. Your Honor is correct. That's exactly what he did. It's very common for courts to go through the analysis to be thorough anyway. And just to respond to something that counsel had said, the court actually did consider these new arguments that were raised by the defendant. This is in the appendix at page 67. The court noted that the defendant was claiming that he had low recidivism scores, the fact that he was reformed. He said that it was hard to imagine that a person contemplating a similar offense, given the punishment that he was already facing and his family situation, all these things were acknowledged by the court. It's just that the court disagreed. The court gave so much weight to the factor about the nature of the offense that it didn't believe these other factors weighed in. I think there's no dispute that he listed them out, but I think one of the questions we have to ask is how much does the court have to say to be sufficient? And I don't know if you have an articulable rule for us that you would recommend. The court just has to provide enough so that – and I don't think there's a number we can give. The court just has to give enough of an analysis so that on review it can be determined that the court adequately considered the factors. And here the court certainly did that. Again, the standard here is just abuse of discretion. Just because one court might view the factors differently than the court did here does not mean that the judge abused his discretion. The question is, was this decision within the permissible range of decisions? And it certainly was, given the – But consistent with that would be the question that my colleague asked earlier, that there could be some scenarios in which a really erroneous view of the extraordinary circumstances could in fact affect the 3A factors, right? I mean, I agree. I totally get that you're saying it didn't happen here and there was very solid footing on one ground or the other, but it's very hard to unscramble the A when something is wrong and was considered, right? I suppose, and as Your Honor says, it's not the case here, or that's our position, I suppose there could be a situation where the court gives no consideration at all to those factors, and those same factors are then being raised in the context of 3553A, and the court just completely disregards them, doesn't recognize them at all, doesn't even consider them. But that's not what happened here. The court did consider them. The court noted what counsel had – what the defendant had raised in his motion. It's just that on balance, which is what has to be done when 3553A factors are considered, the court, when doing that balancing, just considered the nature of the offense here to be so heavy that it did not believe these other factors outweighed that – what the offense, and so it's thought that 3553A did not counsel in favor of a reduction in sentence. And when he starts the argument about 3553A, he's addressing, you know, the defendant's arguments about the 3553A factors separate from the extraordinary compelling reasons arguments. Correct. He addresses them completely separate. He's doing a separate analysis. He addresses them completely separately because that's what the court must do. That is what must happen in these cases, because they're – Well, it must happen if you are, in fact, having two grounds to renounce the motion.  But the district court could have just relied on one or the other, but it did both. Well, it could have just – it could have just relied on 3553A. If it had found extraordinary compelling circumstances, which it did not, it would have then had to analyze – No, of course. Yes. But since it thought there wasn't extraordinary compelling reasons – Correct. And it wasn't 3553A, it could do either one. Your Honor is – your Honor is right. So, but – so the revised policy statement, that is binding now, right? Well, certainly in this case, I think it's really a distinction without a difference because the court certainly – Because you followed it. Because, yes, the court followed it. And – Well, did he follow it? So what about this point that 3A doesn't say where the defendant would be the only available caregiver? So to that point, the court cited a long line of cases where courts had – had remarked that being the only available caregiver was something that had to be shown under this particular provision. It does seem like under this language for a long time, district courts have thought that it does require the defendant to be the only available caregiver. I guess we've never said that. But why are those district courts wrong, I guess is my question. I'm sorry. Why aren't they wrong? Why is that wrong? Because it actually doesn't say that in the policy statement. It does not say that, but I guess there's a few reasons. First, district courts that have remarked about this have said that the animating principle of the family circumstances category, which this falls into, is that there exists an extraordinarily compelling reason being that the defendant has a close family member who's unable to care for themselves and that they be the only caregiver. In addition, the – But how could that be the animating principle if the sentencing commission mentions that requirement in the other subsections but not in this one? When reading this section, if we were to take Appellant's argument to its full extent, I think as Your Honor mentioned earlier in the argument, it would really lead to an absurd result because you could have a situation where a defendant never had any role to play in the life of their child. That child's caregiver has now died or is incapacitated. And under the policy provision, that means that the defendant should now have a sentence reduced because he – You're right. I did say that that might be a weird result, but maybe it would not be a weird result. Maybe whoever was taking care of the child, if that person becomes incapacitated, maybe that means that a parent should show up to take care of it because that's pretty disruptive in the life of a child. Maybe the sentencing commission was thinking about that. And I think that here it's where, obviously, the court is able to exercise its discretion and view the circumstances before it. And one of the considerations for it to consider is whether or not the defendant would really be the only available caregiver. I'm sorry. I just want to make sure that I – I want you to answer my colleague's question, but I just want to make sure that I understand the government's position, which I am now not sure that I do. So first you were saying that district courts are bound by the guidelines, right? But we don't need to meet it because it was – we don't need to reach this issue if we didn't want to because the district court judge was at least consistent with the guidelines. Is that the government's position? We're saying – we have not said that the district court is necessarily bound by the guidelines. What we're saying is that it's not a question that has to be answered in this case because – Okay, so you're not taking a position one way or another whether or not we have to resolve whether or not 3582 is consistent with the guidelines, but we don't need to worry about it because they did. Okay. I'm not sure why the government is not willing to take a position at this point, but that's second. Is it the government's position that the guidelines require a defendant to show that they are the only available caregiver for the minor child if the child's caregiver has become incapacitated? Yes. That is – the defendant must show that because – Okay, so where in the guidelines do we need to interpret that? And that is precisely what my colleague was asking because the part that we see doesn't say anything about the only available caregiver. So isn't that a sign that the guidelines don't require it and that the government should rethink its position? No, Your Honor, because as I said before, if that was not required, it would lead to the absurd result where you could have a situation where a defendant had – So we should look at the conclusion over the absence of the requirement in the text? The guidelines should be interpreted to obviously result in a logical outcome. And here it would result in an illogical outcome if all that was required was to show the incapacitation or death of a caregiver. So there's that, that the result might be illogical. I suppose you also have this case law from when there was not the revised policy statement, when it was in the application notes of the prior statement, and the courts nevertheless interpreted this language to have an only available caregiver requirement. And the Congress – the Sentencing Commission reenacted it. So maybe they were, you know, endorsing that interpretation. There's argument. But regardless, you know, you would say even if that's not right, he also said she's not incapacitated, and that's definitely a requirement of the policy statement, right? You're 100 percent right, Judge. It's the burden of the defendant in this case before the district court to show that his wife is incapacitated, and he did not meet that burden. There's many reasons why she – the court properly found she was not incapacitated. She – as from submissions before the district court, it was clear that she does in fact care for the child. She takes him to and from appointments. She actually flew back and forth with him multiple times between the United States and Uzbekistan. The submission before the district court did say that she was suffering from cancer, but the most serious portion of her treatment actually happened before sentencing in this case. This is not the Nunes case, which is what counsel referred to. In that case, the defendant's wife, the mother of the children, was bedridden at times, was so severely incapacitated she could not take care of the children at certain times. That is not the record before this Court. That's not what was said in this case. The defendant also makes this argument, which is kind of circular and a bit confusing, that because the spouse is required to spend so much time caring for the child, she's incapacitated. And that kind of, you know, kind of puts the cart before the horse. It's a little circular because it's supposed to be that she's incapacitated and therefore can't care for the child. And here the kind of a ‑‑ I thought the implication was there's other children here, and she's basically completely locked down with the one. There are other children. There's not much in the record about the care that's being provided for those other children. The record does show that they are living with a relative here, and so there is care that's happening. But, I mean, there is a basis in the text for this, which is when it says the death or incapacitation, it can't use incapacitation in the sense that she's occupied with other things. It has to be that she is physically incapable of doing it, right? That's the government's reading, Judge. There are many different things that might, you know, incapacitate someone because they could be devoting their time to something else, but that would not necessarily meet the spirit of the guideline here. I think the overarching principle as well is that ‑‑ I don't like the spirit, but even the text. It wouldn't meet the text. I stand corrected. The difference between the spirit and the assertive assault is a little. Your Honor is right. It doesn't meet the text. And the other consideration here is that incarceration in general is going to place a burden on a family, obviously some families more than others. But I think many people would agree that having two parents care for children would be an optimal situation, but the guidelines don't call for the optimal situation. They require that a spouse be ‑‑ that a caregiver be incapacitated or has died and that's just not what's present here. In addition, and I see I'm up for my time, Your Honors. If I could just make one final point. Judge, could I ask one question?  So is it right that he still has an order to be removed to Uzbekistan? Yes. So there really isn't a reason to think he would be taking care of the child in any event. And would that be a legitimate reason for denying the motion? Yes, Judge, and that's actually the point I was going to raise. There is this removal order. Since the time of the argument before the district court, this court has denied a certificate of appealability, and so there's no additional grounds to challenge the habeas motion that was made in the district court about that removal order. The appellant had asked that it be stricken or that it had been vacated from his plea. Because he will not be able to reside in the United States where it was represented before the district court, the child and family were residing, it's unclear how the appellant could. I mean, it's possible that the child would go with him to Uzbekistan, but it's just that the district court could say, well, I don't have a guarantee of that. It's not obvious that that's what would happen. So that's a reason for saying that he wouldn't be attending to the attorney on the reason. That's correct. And in addition, the district court considered the possible employment and how the appellant would contribute to the financial situation of the family, and it's not quite clear that that would even be possible now that the defendant has to be removed.  Thank you very much, Mr. Rhyme. We'll hear back from Mr. Siegel on rebuttal. Hi. So Judge Bredge asked, what rule do you be looking for? I first want to just direct the Court to there was a case that we cited in our brief, United States v. Castillo, 2025, Westlaw 100625. And that case was a Second Circuit case in 2025, January. The Court said, and I quote, if, however, the district court's denial was based on the view that Note 1B applies only to defendants whose health conditions impair basic human functions, the Court erred. In that case, there was a remand. So the rule that I think I would be looking for in this situation, which I think follows directly from the case I cited in my 20HA letter to Luke Mendez, is that where the district court, for lack of a better word, botches the 1B1.13 analysis, and the circumstance raised is highly relevant to the 3553A analysis, and the defendant mentions this point in his 3553A analysis, and then the Court doesn't consider it when reweighing the circumstances, that's the type of rule, that's the type of situation where there's... But, sorry, but how does that play out here? Sure. Like the care of the spouse for the minor child that's part of the 3553A analysis? Sure. So if I can, I think to Luke Mendez is a great analogy. So there, the 1B1.13 error, the Court found was that the Court didn't consider the family circumstances of the declining health of the mother together with rehabilitation. Wouldn't consider it in the aggregate. And on 3553A, the defendant argued that his rehabilitation outweighed his priors in order to show that, in order to counteract the arguments that were made in his original sentencing. But the Court didn't consider the rehabilitation in the 3553A analysis. The First Circuit said that this was error, and it reversed on those facts. Here, under 1B1.13, the Court didn't consider the family circumstances together with the rehabilitation, right? And Mr. Kusinov raised the, his family circumstances. His rehabilitation ought to outweigh the Court's initial findings, which were the offense conduct. But the rehabilitation is right there in the 3553A. Defendant argues that recidivism scores are well below the threshold of general risk and violence scores for defendants otherwise eligible for early release. Defendant argues it's hard to match the person contemplating offense similar given the punishment he's already faced. And then, you know, the horror of a tear-giving family and all of that. Like, that's in the 3553A analysis. Yeah, of course it is, Your Honor. But it's a recitation of our argument. It's the exact same. And we know that this issue pervades this judge's, I guess, practices, because A, you've heard about it before. I've heard this before, back to this argument. Well, he said the things that are relevant, but he didn't really think about them deeply enough. Well, I think the point is, it's that in a situation like ours, where we contend that the 1B1.13 analysis was wrong and that these exact same factors played directly into the 3553A analysis in an intricate way, messing up one and not failing to re-weigh the circumstances in the other is the error. I'm still not following how here the whether or not the court got it right on the external circumstances. And I guess it depends a little bit on what we think the error was or errors were, how that, in this case, plays into the 3553 analysis. I'm missing that link. Sure. So the way it plays out here is the court's failure to at least, to recognize that they can consider these circumstances together and to give them the weight that they were, I think, that they were deserving of, when it then went to consider and perform the 3553A analysis. It didn't explain why or how these changes in Mr. Kusinov's life rebalanced or re-weighed the 3553A analysis. And I think it's notable that at the initial sentencing, like I said, the 35- When you look at the 3553 factors, the severity of the crime, the other factors, I'm just, it's hard for me to see why. Let's, let me give you, let me make it specific. Let's assume, I don't think the government's challenging that the district court completely botched it as to the availability of remote work that would allow him to care for his kid, right? There's the letter in the file and you've pointed it out. Clear errors. How does that in any way, shape, or form impact the 3553 analysis, which is looking more broadly at his characteristics? So I think one way of looking at it is the court's unable to, so 3553A-2 requires the court consider promoting respect for the law and protecting the public, right? If you, oh, well, sorry. The question then comes whether collapsing family as a result of that, is it enough to deter Mr. Kusinov from that conduct? Is it enough to punish him for that kind of conduct? So in other words, if he's experiencing all of these calamities at home, he's sitting and serving a sentence and he's experiencing all of these things in addition to sitting and serving time. If the punishment of what's happened to your family while you're incarcerated is part of the punishment, then district courts should take that into consideration when considering deterrence? Yes, Your Honor. And I think numerous cases of- But you're not deterring other people, right? Like, so other people won't necessarily be deterred by Mr. Kusinov's particular family circumstances. Well, I think Mr. Kusinov, I think, you know, that leads, I guess, to another point I wanted to make. Is the nature of- To the extent that everybody is taken away from their family when they're incarcerated. No, absolutely, Your Honor. That's part of the deterrence, but that would already be part of the consideration of the length of the sentence. Right. But I think when you look at Mr. Kusinov's sentence for one thing, I mean, as this Court said in affirming the denial of his bail, he gave a couple of hundred dollars, which does not say it's not a serious offense. I mean, he took full responsibility for that in his letters to the judge. I think the judge acknowledged that. But maybe for lack of a better word, there was a judge in the Eastern District of Pennsylvania that once described the Compassionist Release Motion as a writ of rachmanus, a Yiddish word for you feel bad for the individual. And I think in these – I think when you – and this is what courts have been doing. They've been looking and they've been considering, all right, this is the term of incarceration that this guy is serving. It's different than other people for these reasons. These extraordinary and compelling reasons make the service of this person's sentence different. It's not the same as everyone else's. And so when you reconsider the 3553A analysis, you ask yourself, okay, considering these circumstances, how does that reweigh, how does that alter the 3553A analysis that I initially considered? And if you're asking yourself for a person like Mr. Kusinov, who at this point was 75 percent through his sentence, I mean, it's hard to believe anyone who's going to, at least on a matter of general deterrence, any person who's going to say, you know what, I think it's a good idea to go give some money to an organization or a person that might go travel to ISIS because maybe my kid is going to have a breakdown, my wife's going to be unable to take care of them, and I'm going to get out early. You're saying that person would be deterred. I think that person is undeterred. But the district court here did not think so, right? Pardon me? The district court here did not think so. Well, I think the district court, all it did was it just reverted back to the nature of the offense without counterbalancing all of the other circumstances that we discussed. And like I said, you know, it's a serious crime, but it was giving a couple of hundred dollars to someone for an offense where compassionate release has been granted, and we cited in our brief. Okay. I think we have those arguments. Thank you very much, Mr. Siegel.  The case is submitted.